**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-24147-CIV-GOODMAN**
**[CONSENT CASE]**

JOSE LUIS GONZALEZ,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social
Security Administration,

      Defendant.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Jose Luis Gonzalez ("Plaintiff") and Defendant Acting Commissioner of the Social Security Administration Carolyn W. Colvin (the "Commissioner") filed cross-motions for summary judgment. [ECF Nos. 19; 22].

An Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled ("the Decision"). Plaintiff seeks judicial review of the Decision, arguing that (1) the Appeals Council improperly assessed the additional evidence that Plaintiff submitted after the Decision; (2) the ALJ failed to properly assess the medical opinion evidence; (3)

the ALJ's Residual Functional Capacity ("RFC")[1] assessment is not supported by substantial evidence; and (4) the ALJ failed to properly evaluate Plaintiff's credibility.

For the reasons outlined below, the Undersigned **affirms** the Decision, **grants** the Commissioner's summary judgment motion, **denies** Plaintiff's summary judgment motion, and enters **final judgment** in favor of the Commissioner and against Plaintiff.

I.    **BACKGROUND**

    **A.**    <u>**Procedural History**</u>

On February 9, 2012, Plaintiff filed a Title II application for a period of disability and Disability Insurance Benefits ("DIB"), alleging disability beginning on February 2, 2012 (R. 54).[2] The agency denied his application initially and on reconsideration (R. 133-38, 141-49). The ALJ held a hearing on April 29, 2014, and Plaintiff, a vocational expert (the "VE"), and an independent medical expert testified (R. 74-114). On August 8, 2014, the ALJ denied Plaintiff's application (R. 48-69) and on September 14, 2015, the Appeals Council denied Plaintiff's request for review (R. 1-4), rendering the Decision final. Plaintiff then filed this action on November 5, 2015. [ECF No. 1].

---

[1]    The Residual Functional Capacity is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

[2]    References to "(R. _)" are to the Bates-numbered pages of the transcript of the administrative record.

**B.**     **Facts**

Plaintiff was born on July 12, 1967, and was 46 years old on the date he was last insured (i.e., December 31, 2013) ("DLI").[3] (R. 56, 60, 67, 241). Plaintiff reported in claim forms that he completed twelfth grade in 1985. (R. 263). He subsequently testified that he attended school in Cuba up to the ninth grade, with no additional school attendance (R. 82). He speaks Spanish but not English. (R. 262). He previously worked as a dairy helper, a hand packer, and a handyman. (R. 102-03). Plaintiff claimed that he stopped working on February 2, 2012 due to heart valve problems. (R. 56). Subsequently, he was diagnosed with depression, which he claimed also prevented him from working. (R. 56-57).

**C.**     **The Decision**

Using the Commissioner's five-step sequential evaluation process in the Decision (R. 54-69),[4] the ALJ concluded that Plaintiff was not disabled. (R. 62, 68). The ALJ found

---

[3]      To be eligible for DIB, a claimant must show he became disabled prior to the expiration of his disability insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Plaintiff, therefore, had to prove he was disabled before his insured status expired on December 31, 2013 to be eligible for DIB. (R. 54, 133, 243).

[4]      In evaluating a claim for disability benefits, an ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520:

1.      Is the claimant performing substantial gainful activity? If not, then an ALJ next determines;

at step one that Plaintiff had not engaged in substantial gainful activity since February 2, 2012, the alleged onset date, through December 31, 2013, the DLI. (R. 56). At step two, the ALJ found that Plaintiff from February 2, 2012, through April 28, 2013 ("Time Period A"), had the severe impairment of status post mitral valve repair. (R. 56). From April 29, 2013 through December 31, 2013 ("Time Period B"), the ALJ found that Plaintiff had the additional impairment of depression. (R. 56). Based on her step two finding, the ALJ assessed the remainder of the sequential steps **separately** for Time Periods A and B. (R. 57-60, 64-67).

---

2.      Does the claimant have one or more severe impairments?  If the claimant does, then an ALJ next considers;

3.      Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled; if not, then an ALJ must determine claimant's RFC; and then determine;

4.      Based on the RFC, can claimant perform his past relevant work?  If so, then he is not disabled.  If he cannot perform his past relevant work, then an ALJ must finally determine;

5.      Based on his age, education, and work experience, and the RFC, can claimant perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

See *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

4

i.      *Time Period A*

At step three for Time Period A, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 57).

The ALJ then found that Plaintiff had the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). (R. 57). At the hearing, in response to the ALJ's hypothetical, the VE testified that Plaintiff could not perform his past work as a dairy helper, packer, or handyman (R. 106-07). The VE also testified that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform other work, such as a sorter, agricultural producer; housekeeping cleaner, and a marker (R. 107).

Applying the RFC at step four, the ALJ found that Plaintiff was unable to perform his past work as a dairy helper, packer, or handyman. (R. 60).

At step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were significant amounts of jobs in the national economy that Plaintiff could have performed and that he was not disabled. (R. 61-62).

ii.     *Time Period B*

At step three for Time Period B, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 62).

The ALJ then found that Plaintiff had the RFC, for Time Period B, to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) with additional postural and mental limitations, such as "claimant requires an occupation with only occasional interaction with supervisors[,]" "he is unable to perform fast-paced production work" and is "limited to jobs which do not require frequent, recurrent contact with the general public." (R. 64). At the hearing, in response to the ALJ's hypothetical, the VE testified that Plaintiff could not perform his past work based on his Time Period B RFC limitations. (R. 108). The VE also testified that a hypothetical person of Plaintiff's age, education, work experience, and RFC could perform other work such as a housekeeping-cleaner, marker, sorter, and sandwich board carrier. (R. 109-11).

Applying the RFC at step four, the ALJ found that Plaintiff was unable to perform his past work for Time Period B. (R. 67).

At step five, the ALJ found there were significant amounts of jobs in the national economy that Plaintiff could have performed and that he was not disabled. (R. 67-68).

## II.   APPLICABLE LEGAL STANDARDS

In reviewing the Decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether his findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984).  "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Phillips,* 357 F.3d at 1240 n. 8 (internal citation omitted). This standard does not permit a court to consider only those parts of the record that support an ALJ; the court must view the entire record and also consider evidence which detracts from the evidence relied on by an ALJ. *Mackie v. Astrue*, No. 1:07-cv-00098-MP-WCS, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008).

While the Court applies a presumption in favor of an ALJ's finding of fact, no such presumption applies to an ALJ's legal conclusions. Thus, the Court must reverse if an ALJ incorrectly applied the law or if the decision fails to provide the court with sufficient reasoning to determine whether the law was properly applied. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, at * 5 (M.D. Fla. Jan. 22, 2008). An ALJ's failure to specify the weight given to evidence contrary to her decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-cv-531-J-TEM, 2011 WL 4356149, at * 5 (M.D. Fla. Sept. 19, 2011).

Title 42 United States Code Section 405(g) permits a district court to remand an application for benefits to Commissioner by two methods, which are commonly known as "sentence four" remands and "sentence six" remands, each remedying a separate problem.

The fourth sentence of section 405(g) provides the federal court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Perez*, 2008 WL 191036, at * 5; 42 U.S.C. § 405(g).

The sixth sentence provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

## III.   ANALYSIS

As previously stated, Plaintiff seeks judicial review of the Decision, arguing that (1) the Appeals Council improperly assessed the additional evidence that Plaintiff submitted after the Decision; (2) the ALJ failed to properly assess the medical opinion evidence; (3) the ALJ's Time Period B RFC assessment was not supported by substantial evidence; and (4) the ALJ failed to properly evaluate Plaintiff's credibility.

### A.   <u>Whether the Appeals Council Failed to Properly Assess the Post-Decision Evidence</u>

Plaintiff first argues that this Court should remand this case because the Appeals Council failed to consider the new and material evidence that he submitted after the Decision. (R. 14-43). This evidence consists of the following: the March 2015 medical records from psychologist Lianne Acosta-Ginart and the October 2012 medical records from psychiatrist Edwin Gomez.

Because Plaintiff's new and material evidence has *already* been submitted to the Appeals Council, a "sentence six" remand is inapplicable to this case. This is because a "sentence six" remand "allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to

8

remand for reconsideration of evidence previously considered by the Appeals Council."

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (reasoning that

"[b]ecause evidence properly presented to the Appeals Council has been considered by

the Commissioner and is part of the administrative record, that evidence can be the

basis for only a sentence four remand, not a sentence six remand.") (internal citations

omitted). Therefore, the new evidence presented to the Appeals Council by Plaintiff can

support *only* an argument that Plaintiff is entitled to a sentence four remand.

 A plaintiff may present new evidence at each stage of the administrative process.

*See* 20 C.F.R. § 404.900(b); *Ingram*, 496 F.3d at 1261. The Appeals Council must consider

new material and chronologically relevant evidence and review the case if the ALJ's

decision is contrary to the weight of the record evidence as a whole. *Ingram*, 496 F.3d at

1261. The Appeals Council has the discretion to deny review of the ALJ's denial of

benefits. *See* 20 C.F.R. § 404.967. If the Appeals Council considers the new evidence and

determines it did not establish error in the ALJ's decision, then the Appeals Council is

not required to provide a detailed discussion of the new evidence or explain its

rationale for denying review. *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 784-85

(11th Cir. 2014).

 Here, the Appeals Council denied Plaintiff's August 8, 2014 request for review of

the Decision. (R. 1-4). However, to make this determination, the Appeals Council did in

fact consider the additional post-Decision materials that Plaintiff submitted. (R. 14-43).

Specifically, the Appeals Council stated that it "looked at medical records from Lianne Acosta-Ginart, Psy.D. dated March 10, 2015" but stated that the ALJ decided Plaintiff's case only through August 8, 2014. (R. 2). The Appeals Council opined that this "new information is about a later time" and "[t]herefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before August 8, 2014." (R. 2). As a result, the Appeals Council found that Dr. Acosta-Ginart's records did not render the Decision denying benefits erroneous. (R. 1-2).

The record is clear that Dr. Acosta-Ginart's March 6, 2015 opinion did in fact pertain to the status of Plaintiff's condition seven months **after** the Decision was issued. (R. 69). *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). Specifically, Dr. Acosta-Ginart states in her report, that "[Plaintiff] was evaluated per his psychiatric nurse practitioner's referral for the purpose of assessing his **current** cognitive/behavioral functioning[.]" (R. 35) (emphasis supplied). In addition, "[t]his report will assist in clarifying the nature and extent of the patient's **current** cognitive difficulties [.]" (R. 36) (emphasis supplied). Further, Dr. Acosta-Ginart's opinions were based on results of testing administered on March 6, 2015 (R. 35, 38-40). Thus, Dr. Acosta-Ginart's opinion was not contrary to the Decision. This opinion evidence *was not relevant* to the Appeals Council's review because it did not relate to the period on or before the Decision's date. *See* 20 C.F.R. § 404.970(a)(5).

Plaintiff argues that Dr. Edwin Gomez's October 2012 evaluation (R. 28-33), which was attached to Dr. Acosta-Ginart's evaluation package and submitted to the Appeals Council at the same time (R. 14-43), addressed the relevant time period. This evaluation was not mentioned in the Appeals Council's Notice of Action. (R. 1-4). Thus, this Court must consider whether this new evidence submitted to the Appeals Council "renders the denial of benefits erroneous." *Mitchell*, 771 F.3d at 785.

In the evaluation, Dr. Gomez stated that Plaintiff was admitted voluntarily to the Miami Behavioral Health Center due to feeling depressed and having suicidal ideation without a plan. (R. 28). During the mental status exam, Dr. Gomez noted that Plaintiff had a depressed mood, fair insight, poor judgment, poor sleep and appetite, obsessive thought content, visual hallucinations, suicidal thoughts, fair reliability, poor eye contact, and poor concentration/attention span (R. 31). He noted that medication was needed to stabilize symptoms, behavioral changes were negatively impacting functioning, and activities of daily living were poor. (R. 32).

However, Plaintiff does not explain *how* this additional evidence, the 2012 Dr. Gomez evaluation, undermined, if at all, the substantial evidence supporting the Decision. *See Powers*, 738 F.2d at 1152. Instead, he merely claims that the new evidence "is entirely consistent with the substantial evidence of record and tends to bolster the claimant's repeated reports of his alleged symptoms and limitations[.]" [ECF No. 19, p. 7]. However, the Appeals Council was not required to provide a detailed rationale for

11

denying review nor is it required to opine on every single piece of evidence submitted, including the 2012 Dr. Gomez evaluation. *See Mitchell*, 771 F.3d at 782-84. Therefore, the 2012 Gomez evaluation submitted to the Appeals Council, even though not explicitly discussed, did not render Commissioner's denial of benefits erroneous and the Court will not remand on this basis. *See Ingram,* 496 F.3d at 1262.

At bottom, Dr. Gomez's evaluation was cumulative of the evidence before the ALJ and the Appeals Council determined that Dr. Acosta-Ginart's March 2015 evaluation was not chronologically relevant. As a result, none of this post-Decision evidence was contrary to the substantial evidence supporting the Decision. *Mitchell,* 771 F.3d at 785 (internal citations omitted).

     **B.**     <u>Whether the ALJ Failed to Properly Assess the Medical Opinion Evidence</u>

         i.    *Treatment Notes of Drs. Alba Arbeu and Alfredo Piniella and Licensed Clinical Social Worker Lissette Collazo Maza ("LCSW")[5]*

Plaintiff contends that the ALJ failed to accord specific weight to the treatment notes of Drs. Alba Abreu and Alfredo Piniella, at the Miami Behavioral Health Center (from April 30, 2013 through May 5, 2013), and of LCSW Collazo Maza (from May 17, 2013). [ECF No. 19, pp. 11-16]. The Commissioner contends that these treatment notes

---

[5]    The Undersigned notes that Plaintiff does not argue that the Court should regard the opinions of Drs. Alba Abreu and Alfredo Piniella and LCSW Collazo Maza as treating physicians.

were not medical opinions and that the ALJ did not need to accord them specific weight.

An ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (internal citation omitted).  Plaintiff emphasizes the Eleventh Circuit's ruling in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), in which the Court concluded that treatment notes from a specific physician did in fact constitute a "medical opinion" that the ALJ was obligated to weigh. The Eleventh Circuit reached that conclusion because of the *content* of the specific treatment notes in question. It did not conclude that *all* treatment notes must be referenced and weighed. The notes at issue in *Winschel* included a description of the patient's symptoms, a diagnosis, and a judgment about the severity of his impairments. Based on such content, the *Winschel* court found that the notes did constitute a medical opinion. *Id.* at 1179 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Here, Dr. Abreu's, Dr. Piniella's, and LCSW Collazo Maza's treatment notes (R. 487-501, 518-519) reflected judgments about the nature and severity of Plaintiff's mental impairment, including his symptoms, diagnosis and prognosis, and also described Plaintiff's physical or mental restrictions based on his depression and his suicidal thoughts. Therefore, the Undersigned finds that these treatment notes are medical opinions. Thus, the ALJ should have stated with particularity the weight given to each

medical opinion and the reasons why such weight was accorded. *Sharfaz*, 825 F.2d at 279.

However, "[i]n limited circumstances, the failure of an ALJ to state the weight given to the medical opinion of a physician may be harmless error." *Ostos v. Astrue*, No. 11-23559-CIV, 2012 WL 6182886, at *13 (S.D. Fla. Nov. 20, 2012). The Eleventh Circuit has held that where the ALJ mentioned the physician's findings within his or her determination, and the findings were not inconsistent with the record, the ALJ's failure to state what weight he or she gave to the examining physician's opinion was harmless error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190-91 (11th Cir. 2008).

Here, the ALJ did specifically discuss Drs. Abreu's and Piniella's medical opinions from April 30, 2013 through May 5, 2013. (R 65). The ALJ stated that "the claimant began treatment at Miami Behavioral Health Center on April 29, 2013" and "[o]n admission, the claimant was not taking any medication and reported suicidal ideation, hearing voices, and visual hallucinations" but "[s]hortly after the claimant began treatment and obtained medication his condition improved." (R. 65).

The ALJ noted Plaintiff's improvement by referring to the treatment notes of Drs. Abreu and Piniella (R. 492-93, 499) and stating that: "within seven days of arrival, he appeared euthymic and fully oriented[,]" and "his memory, speech, and thought processes were intact[.]" (R. 65). The ALJ found that the treating notes stated that

Plaintiff "denied experiencing hallucinations, delusions, and suicidal ideation" and that

his "concentration, insight, and judgment were fair[.]" (R. 65).

>Specifically, the ALJ stated that:

>Treating psychiatrists, Dr. Alfredo Pin[i]ella and Dr. Alba Abreu, noted "improvement [was] observed" and "evident as seen in the reduction of the acuity and/or frequency" of the claimant's symptoms (Ex. 5F, p. 16, 22, 24; 6F, p. 9, 11). Dr. Pin[i]ella assigned the claimant a functional level of 8 - which is near the highest level of functioning of 10 (Ex. 5F, p. 16). The claimant was discharged in stable condition and began outpatient treatment.

(R. 65).

Based on the statements above from the Decision, it is clear that the ALJ

implicitly afforded considerable weight (and possibly even great weight) to Drs.

Abreu's and Piniella's medical opinions regarding Plaintiff's mental condition and that

it improved with medication (R. 65). Plaintiff does not dispute these findings that he

improved over time when he took his medication. Plaintiff claims only that the ALJ

erred by not specifically assigning weight to Drs. Abreu's and Piniella's medical

opinions.

An ALJ's failure to assign weight to a medical opinion is harmless and does not

warrant remand when the opinion does not contradict the ALJ's decision. *See Denomme

v. Comm 'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878-79 (11th Cir. 2013); *Caldwell*, 261 F.

App'x at 191; *Wright v. Barnhart*, 153 F. App' x 678, 684 (11th Cir. 2005). Here, Plaintiff

has not identified any finding within the doctors' records that meaningfully conflicts with the Decision, indicating that Plaintiff improved when he took his medication.

In addition, LCSW Collazo Maza was not an acceptable medical source as defined by 20 C.F.R. § 404.1513(a). Therefore, her opinions were not subject to any special consideration or evaluation. SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); *Crawford,* 363 F.3d at 1160. Here, the ALJ necessarily considered LCSW Collazo Maza's treatment records (R. 63, 65-66) because the ALJ stated that she considered the entire record and she cited "Ex. F6," which contained LCSW Collazo Maza's treatment notes. Even so, there was no requirement for the ALJ to make use of LCSW Collazo Maza's opinions or refer to every piece of medical evidence included in the record. 20 C.F.R. § 404.1513(d); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

After reviewing the record, the Undersigned finds that the medical opinions of Drs. Abreu and Piniella are not contrary to the ALJ's assessment or to the record as a whole. Even if they were, the Court, however, must not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips*, 357 F.3d at 1240 n. 8 (quotation marks omitted). Accordingly, the Undersigned rejects Plaintiff's argument that the ALJ committed reversible error by not assigning specific weight to the doctors' opinions, as such errors were harmless.

ii.    *Weight Accorded to Treating Psychiatrist Dr. Manuela Georgescu*

Plaintiff next argues that the ALJ failed to articulate the weight accorded to treating psychiatrist Dr. Georgescu's opinion in its entirety and instead limited her review to Dr. Georgescu's April 2014 Ability to do Work Related Activities Assessment ("Mental Assessment"). (R. 521-23).

As an initial point, Plaintiff misstates the ruling in *Winschel* that "treatment notes **_necessarily_** contain 'medical opinions[.]'" [ECF No. 19, p. 16] (emphasis supplied). Rather, *Winschel* stands for the proposition that treatment notes *may* include medical opinions, but only when the criteria for a medical opinion is included in the notes -- i.e., the notes "reflect judgments about the nature and severity of [the plaintiff's] impairments[.]" *See Winschel*, 631 F.3d at 1179. Here, Plaintiff does point to specific sections of Dr. Georgescu's treatment notes that identified Plaintiff's mental symptoms through examination, previous diagnoses, current medication plans, and indications as to his improvement. Thus, the Court finds that Dr. Georgescu's treatment notes constituted medical opinions.

Although the ALJ did not afford specific weight to the treatment notes themselves, she did **_consider_** them when she allocated weight to the Mental Assessment. Based on collectively considering the evidence, the ALJ provided "little weight" to Dr. Georgescu's Mental Assessment "because it is inconsistent with [her]

contemporaneous clinical notes as well as other substantial evidence of record[.]" (R. 66).

The ALJ stated that "[o]n April 17, 2014, Dr. Georgescu opined the claimant had marked limitations (defined as a substantial loss in ability to effectively function) understanding, remembering, and carrying out simple instructions (Ex. 7F). Dr. Georgescu opined the claimant had extreme limitations (defined as no useful ability) interacting appropriately with the supervisors and coworkers. The claimant also had extreme limitations making judgments on simple work-related tasks." (R. 66).

However, the ALJ found that Dr. Georgescu's opinion was inconsistent with her contemporaneous clinical notes, which documented on "July 31, 2013 that the claimant's overall functioning was '7' on a scale of 1-10, '(Scale: 1 = poor; 5 = moderate; 10 = highest level of functioning)'" and  that "[o]nce he started treatment in May 2013, [her] clinical notes documented improvement. Dr. Georgescu noted on July 31, 2013 that 'progress was observed and/or reported[.]'" (R. 66).

The ALJ further discussed Dr. Georgescu's opinion that Plaintiff "has extreme limitations making judgments on simple work-related tasks" and she concluded that this "is also inconsistent with contemporaneous clinical notes from [other doctors at the] Miami Behavioral Health Center" which "indicate [that] the claimant demonstrated fair judgment on mental status examination" and "document appropriate affect, fair eye contact and unremarkable speech on examination." (R. 66).

Plaintiff does not dispute these findings (i.e., that Plaintiff improved over time when Plaintiff took his medication). Plaintiff argues only that the ALJ erred by not specifically assigning weight to Dr. Georgescu's treatment notes. However, this type of error would not warrant remand because Plaintiff has not identified any finding in the treatment notes that meaningfully conflicts with the Decision. *Denomme*, 518 F. App'x at 878-79; *Caldwell*, 261 F. App'x at 191; *Wright*, 153 F. App' x at 684.

Opinions of treating physicians must be given "substantial or considerable weight" unless good cause is shown to the contrary. *Lewis*, 125 F.3d at 1440. Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41 (internal citations omitted). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (internal citations omitted).

Good cause exists for the ALJ to accord Dr. Georgescu's opinion little weight. As stated above, the ALJ found that Dr. Georgescu's opinion as to Plaintiff's extreme mental limitations was inconsistent with the evidentiary record as a whole, as it was not supported by her treatment notes as well as the treatment notes of other doctors. (R. 66). Thus, the ALJ has clearly articulated several reasons for not giving "substantial or considerable weight" to Dr. Georgescu's opinion.

Furthermore, the ALJ also pointed to other evidence that discredited Dr. Georgescu's opinion. Specifically, the ALJ found that Dr. Georgescu saw Plaintiff for only 5 to 15-minute medication management sessions with checklist evaluations and that Plaintiff sought treatment only when he did not follow through with his treatment regimen. (R. 66). The ALJ also found that medical evidence proved that when Plaintiff *did* follow through with his treatment, his conditions improved. (R. 66). The ALJ accorded little weight to parts of Dr. Georgescu's opinion that discussed Plaintiff's condition that pre-dated Plaintiff's testimony regarding when he started treatment. (R. 66). All these findings taken together prove that the "little weight" accorded to Dr. Georgescu's opinion was supported by substantial evidence.

In contrast, Plaintiff contends that Dr. Georgescu's opinion that Plaintiff's mental limitations were extreme was supported by record evidence. [ECF No. 19, p. 16-19]. However, this Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner],"even if the evidence may preponderate against it. *Phillips*, 357 F.3d at 1240 n. 8 (quotation marks omitted); *Dyer*, 395 F.3d at 1210.

Moreover, Plaintiff's argument misses the point. The issue is not whether the record evidence might support a different finding, but whether substantial evidence supported the ALJ's determination. *Dyer*, 395 F.3d at 1210. As a result, Plaintiff is not

entitled to remand based on the weight accorded to Dr. Georgescu's Mental Assessment.

### C.  Whether the ALJ's RFC finding is supported by substantial evidence

Plaintiff argues that the ALJ's RFC for Time Period B was not supported by substantial evidence because the ALJ failed to take into account all exertional and non-exertional limitations arising from Plaintiff's mental impairments. The ALJ determined that Plaintiff had the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) with additional postural and mental limitations, such as "claimant requires an occupation with only occasional interaction with supervisors[,]" "he is unable to perform fast-paced product work" and is "limited to jobs which do not require frequent, recurrent contact with the general public." (R. 57, 64).

Specifically, in Plaintiff's motion, he focuses on the fact that the ALJ did not take into account the opinion evidence discussing Plaintiff's psychotic symptoms.  [ECF No. 19, pp. 20-22].

 However, Plaintiff has failed to show that the ALJ's RFC finding was unsupported by substantial evidence or that the ALJ did not follow the proper legal standards. Thus, Plaintiff has not proven error with the ALJ's RFC finding nor shown that his impairments warranted additional limitations beyond those in his RFC.

The regulations provide that the ALJ must assess and make a finding about a claimant's RFC based on all the relevant evidence in the record, *see* 20 C.F.R. §§

404.1520(a)(4)(iv), 404.1545(a)(3); *Phillips*, 357 F.3d at 1238, which is what the ALJ did. (R. 57-60, 64-67). The ALJ stated repeatedly that she considered the entire record when making her decision (R. 54, 57, 60, 64, 67), and her discussion of the medical evidence and Plaintiff's testimony shows that she considered the entire record.

To the extent that Plaintiff believes that his impairments warranted additional functional limitations, it is Plaintiff's burden to produce evidence in support of his claim. S*alazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 66 (11th Cir. 2010). To the extent that Plaintiff argues there were "several treatment notes" that were not discussed in the Decision [ECF No. 19, pp. 21-22], there is no rigid requirement that the ALJ specifically refer to every piece of evidence as long as the court can conclude that the ALJ considered Plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 211.

Furthermore, "[t]he mere existence of . . . impairments does not reveal the extent to which they limit [a plaintiff's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n. 6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work"); s*ee also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself.") (internal citation omitted).

At bottom, Plaintiff points only to a single impairment, psychosis, found in the record evidence, but he fails to present any supporting evidence of that impairment's actual *effect* on him, i.e., how it prevented him from performing light work. Without any evidence of the effect of this diagnosis, Plaintiff's argument is not convincing. Accordingly, the Undersigned finds that the medical evidence of Plaintiff's psychotic symptoms did not render the ALJ's Time Period B RFC determination contrary to the substantial record evidence.

### D.   Whether the ALJ failed to properly assess Plaintiff's credibility

Plaintiff contends that the ALJ did not properly consider the portion of Plaintiff's testimony which was contrary to her finding that Plaintiff did not have a disability. For example, Plaintiff testified that he had not driven a car since his cardiac surgery, heard voices at night, and spent most of the day sleeping due to his medications. (R. 87-91). He also testified that he did not go out, did not cook or clean, and required his mother and sister's help for these daily tasks and to help administer his medications. (R. 91-92).

When a plaintiff attempts to prove disability based on his subjective symptoms, he must show "evidence of an underlying medical condition" and either "objective medical evidence that confirms the severity of the alleged pain or symptoms arising from that condition" or evidence that the "objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal citation omitted).

The ability to determine the credibility of a plaintiff's subjective thoughts is reserved to an ALJ. *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987)). However, "[i]f the ALJ decides not to credit such testimony, [the ALJ] must articulate explicit and adequate reasons for doing so." *Holt,* 921 F.2d at 1223 (internal citation omitted).

In the Eleventh Circuit, a "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). When credibility is crucial to the outcome of a case, the lack of an explicit credibility finding can be grounds for remand. *Id.* (citing *Smallwood v. Schweiker,* 681 F.2d 1349, 1352 (11th Cir. 1982)).

Here, the ALJ found that Plaintiff's testimony concerning the symptoms of his heart condition and depression was not entirely credible. (R. 59, 65). The ALJ specifically stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 59, 65).

This boilerplate language appears in many ALJ decisions that this Court has reviewed. To avoid a wholly conclusory statement, an ALJ will typically also include analysis in addition to this formulaic language, as the ALJ did here. (R. 59-60, 65-66).

24

For Time Period A, the ALJ noted that Plaintiff testified that he did not feel well and was unable to perform activities of daily living after the onset of his heart condition. (R. 59). However, the ALJ found that the treatment records indicated that Plaintiff's condition improved with just minimally invasive surgery, which occurred on February 2, 2012, and that there was no documented follow-up treatment for Plaintiff's heart impairment after September 2012 (R. 59).

To distinguish Plaintiff's hearing testimony on April 29, 2014, that he relied on his sister and mother to complete household chores and do his shopping (R. 58), the ALJ noted that Dr. Camacho[6] stated in his medical consultative report that Plaintiff reported to him that he helped his mother with the household chores and took walks for entertainment. (R. 58, 467). The Undersigned finds that Dr. Camacho's statements and Plaintiff's statements taken together, and considered in light of Plaintiff's failure to seek further medical treatment for his heart after September 2012, rendered his testimony about his inability to conduct daily household chores on his own due to his heart condition not credible.

Regarding Plaintiff's mental impairments for Time Period B, the ALJ found that Plaintiff had the severe impairment of depression (R. 65) but that his statements as to the degree of his depression, i.e., hearing voices and that he could not perform household chores on his own, were not credible. The ALJ based this determination on

---

[6]     Dr. Teatino Camacho practices family medicine and evaluated Plaintiff on June 5, 2012, four months after his mitral valve repair surgery. (R. 467-69).

the medical records, which showed that Plaintiff's symptoms improved when he took his medication and followed his treatment. The ALJ explained that:

> [i]n reaching this conclusion, the undersigned notes that the claimant's lack of compliance with his recommended treatment regimen resulted in his April 2013 decompensation (Ex. 5F, p. 12). With treatment, the claimant reported "feeling more calm" (Ex. 6F, p. 8). Objective findings also confirm the claimant improved with medication and did not experience side effects (Ex. 6F, p. 5, 10, 11). The claimant's self-reported improvement is inconsistent with his testimony that [he] was unable to perform household chores or other daily activities.

(R. 65-66).

Accordingly, I find that the ALJ's credibility determination is sufficiently articulated and supported by substantial evidence.

## IV.    CONCLUSION

For the reasons set out above, the Undersigned **affirms** the Decision, **grants** the Commissioner's summary judgment motion, **denies** Plaintiff's summary judgment motion, and enters **final judgment** in favor of the Commissioner and against Plaintiff.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on March 17, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All counsel of record